26 F.3d 84
 The Reverend W.G. HOWARD, Plaintiff-Appellee,
v.
John T. SUSKIE, Manager, Little Rock Office of the United
States Department of Housing and Urban
Development, in his individual capacity,
Defendant-Appellant,
Department of Housing and Urban Development; Henry Cisneros
*, Secretary, in his official
capacity; Mary Sharp; Rita Smith, Defendants.
 No. 93-2769.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1994.
Decided June 15, 1994.
 
 Michael S. Raab, Appellate Staff, Dept. of Justice, Washington DC, argued, for appellant.
 James Manley, Little Rock, AR, argued, for appellee.
 Before LOKEN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and KYLE,** District Judge.
 LOKEN, Circuit Judge.
 
 
 1
 Responding to complaints of financial mismanagement and conflicts of interest, John T. Suskie as Manager of the Department of Housing and Urban Development office in Little Rock, Arkansas, imposed a "limited denial of participation" (LDP) sanction prohibiting five Board members of the Stuttgart Housing Authority (SHA) from participating in certain housing assistance programs for twelve months. Reverend W.G. Howard, one of the sanctioned Board members, filed an administrative appeal, and Suskie eventually withdrew the sanction against Howard after further investigation revealed that he played only a passive role in SHA's management.
 
 
 2
 Howard then filed this suit against Suskie and other HUD officials, alleging claims of racial discrimination and pendent claims of slander and outrage. The district court dismissed all but the claims against Suskie under 42 U.S.C. Secs. 1981 and 1985(3), ruling that a fact issue remained as to Suskie's motives in imposing the sanction. Suskie appeals, arguing that he is entitled to absolute or qualified immunity. See generally Taylor v. Bowers, 966 F.2d 417, 420 (8th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992). Concluding that he is entitled to qualified immunity, we reverse.
 
 I.
 
 3
 Suskie argues that he is entitled to absolute immunity because he was engaged in adjudicatory functions in imposing the LDP sanction, citing Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and our decision in Kwoun v. Southeast Mo. Prof. Stands. Rev. Org., 811 F.2d 401 (8th Cir.1987), cert. denied, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988). We disagree. In Butz, the Supreme Court rejected the argument that federal officials are broadly entitled to absolute immunity for executive and administrative actions. Instead, the Court limited absolute immunity to those who participate in agency adjudications, where such immunity is appropriate because "federal administrative law requires that agency adjudication contain many of the same safeguards as are available in the judicial process." 438 U.S. at 513, 98 S.Ct. at 2914. Under Butz, absolute immunity in the Executive Branch is reserved for hearing officers, administrative law judges, agency trial attorneys, and "agency officials performing certain functions analogous to those of a prosecutor." See 438 U.S. at 512-17, 98 S.Ct. at 2913-16.
 
 
 4
 The Supreme Court adhered to the principle that qualified immunity is the norm and absolute immunity the limited exception in Cleavinger v. Saxner, 474 U.S. 193, 206, 106 S.Ct. 496, 503, 88 L.Ed.2d 507 (1985), where it conceded that "the line between absolute immunity and qualified immunity often is not an easy one to perceive and structure," and again in Malley v. Briggs, 475 U.S. 335, 342-43, 106 S.Ct. 1092, 1096-97, 89 L.Ed.2d 271 (1986), where it denied absolute immunity to a police officer applying for a warrant because his action was "further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." Thus, for purposes of absolute immunity, there is a crucial distinction between agency actions which begin or are a part of a judicial or quasi-judicial administrative process, and agency actions which are independent of such a process.
 
 
 5
 In this case, Suskie's LDP sanction was not the product of an agency adjudication; indeed, it was "effective immediately upon issuance." 24 C.F.R. Sec. 24.710(b). Suskie was not acting as prosecutor or judge; he was managing a HUD office. In other words, this was an executive action, not a part of a quasi-judicial agency process. For that, Suskie is entitled only to qualified immunity.[1]
 
 
 6
 Under HUD's regulations, Reverend Howard was entitled to request a formal hearing long after the LDP sanction had gone into effect. See 24 C.F.R. Secs. 24.712; 24.713. But that does not make Suskie's action quasi-judicial in nature, nor does it provide "sufficient checks on agency zeal" to justify absolute immunity, Butz, 438 U.S. at 516, 98 S.Ct. at 2915. The "correctability of error on appeal" is a relevant factor but by itself does not justify absolute immunity. Cleavinger, 474 U.S. at 202, 206, 106 S.Ct. at 500, 503.
 
 
 7
 It is helpful to contrast the absence of a quasi-judicial process in this case with the adjudicatory safeguards that surround the imposition of somewhat similar sanctions by other agencies. For example, before the Bureau of Alcohol, Tobacco and Firearms may revoke a permit, it must issue a citation to the permit holder setting forth the grounds for possible revocation. If the permit holder requests a hearing, one is held before an administrative law judge. If no hearing is requested, the Regional Compliance Director reviews the citation and makes an initial decision regarding revocation, which is subject to appeal. See 27 C.F.R. Secs. 200.55-200.118.[2] In such a context, the administrator's action is "subject to scrutiny in the proceeding itself." Butz, 438 U.S. at 516, 98 S.Ct. at 2915. Here, on the other hand, Suskie unilaterally imposed the LDP sanction independent of an adjudicatory process.
 
 
 8
 Suskie nevertheless maintains that our decision in Kwoun is controlling. In Kwoun, the Health Care Financing Administration excluded a physician from eligibility for Medicare payments for ten years. HCFA acted on the recommendation of regional and statewide physician peer review groups after notifying the physician of the recommendation, advising him of his right to oppose it, and conducting an informal hearing. 811 F.2d at 403. Following entry of the exclusion order, the physician was entitled to a formal administrative hearing and judicial review. In Kwoun, after that review process resulted in reversal of the exclusion order, we held that HCFA officials responsible for the order were entitled to absolute immunity. The exclusion order in Kwoun--though imposed before the end of the adjudicatory process--was part of a lengthy, integrated, quasi-judicial administrative process. Applying the principles of Butz, we conclude that Kwoun is distinguishable, and Suskie is not entitled to absolute immunity for imposing the LDP on Reverend Howard.
 
 II.
 
 9
 Qualified immunity shields government employees acting within the scope of their duties from suit so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would know." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Howard contends that Suskie violated a clearly established right by sanctioning him on the basis of race. Given "the importance of resolving immunity questions at the earliest possible stage in litigation," Hunter v. Bryant, --- U.S. ----, ----, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (per curiam), we must determine whether "there is any genuine issue, triable to a jury, of improper motivation." Wright v. South Ark. Regional Health Center, Inc., 800 F.2d 199, 203 (8th Cir.1986). Reverend Howard bears the burden of going beyond the allegations in his pleadings and coming forward with evidence establishing a genuine dispute regarding Suskie's motivation in imposing the LDP sanction. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
 
 
 10
 In his motion for summary judgment, Suskie produced affidavits from several HUD officials, setting forth that: (1) LDP sanctions were issued to all members of the SHA Board, including a white member; (2) the sanctions were imposed in response to evidence of fiscal mismanagement, potential violations of HUD conflict-of-interest regulations, numerous complaints of mismanagement, and a request by the Mayor of Stuttgart to take over day-to-day operations at SHA; (3) the sanctions were imposed after extensive consultation with other officials and HUD legal counsel; and (4) race played no part in the decision to issue the LDP sanctions.
 
 
 11
 Reverend Howard's response consisted of two affidavits--his own and that of Reverend O'Neal, another Board member--averring that Reverend Howard had no knowledge regarding complaints about the SHA, financial mismanagement, or violations of conflict of interest regulations. These affidavits do not create a triable issue of fact regarding Suskie's motives in imposing the LDP sanction. At best, they establish that Reverend Howard was innocent of any Board misdeeds, which Suskie acknowledged by rescinding the sanction against Howard. The affidavits fail to rebut Suskie's showing that the LDP sanctions were issued in good faith and on a reasonable basis. In these circumstances, Reverend Howard's response is "insufficient to overcome [his] responsibility under Rule 56(e) to do more than rest on his pleadings." Wright, 800 F.2d at 204; see also Myers v. Morris, 810 F.2d 1437, 1452-54 (8th Cir.), cert. denied, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Suskie is therefore entitled to qualified immunity.
 
 
 12
 The order of the district court denying Suskie's motion for summary judgment is reversed.
 
 
 13
 JOHN R. GIBSON, Senior Circuit Judge, concurring separately.
 
 
 14
 I concur in the court's judgment, but write separately to express my view that Suskie is entitled to absolute immunity.
 
 
 15
 An agency official is entitled to absolute immunity from liability for damages for "judicial, prosecutorial and legislative" acts, but not for administrative functions. Harlow v. Fitzgerald, 457 U.S. 800, 811, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982); see Butz v. Economou, 438 U.S. 478, 514, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978); Jackson v. Rapps, 947 F.2d 332, 338 (8th Cir.1991). "An agency official ... may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought," and therefore an official performing functions akin to a prosecutor's tasks is protected by absolute immunity. Butz, 438 U.S. at 515, 98 S.Ct. at 2915. Absolute immunity attaches to an official's function, not to his position. Burns v. Reed, 500 U.S. 478, 485, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991). The official seeking absolute immunity bears the burden of establishing it for the function in question. Buckley v. Fitzsimmons, --- U.S. ----, ----, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993).
 
 
 16
 I believe Kwoun v. Southeast Missouri Professional Standards Review Organization, 811 F.2d 401, 406 (8th Cir.1987), cert. denied, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988), controls this case. In Kwoun, in determining whether the officials' function of imposing administrative sanctions was prosecutorial in nature, we focused on whether the decision was subject to review and whether the procedural protections under the applicable regulations offered a mechanism to rectify improper sanction decisions. Id. at 406.
 
 
 17
 The applicable Department regulations allow an individual who has been sanctioned to request an administrative conference to "present all relevant information" to the agency official presiding over the conference. 24 C.F.R. Sec. 24.712 (1993). If the sanctioned individual is not satisfied with the decision the presiding official issues after the conference, the affected person may request a hearing before an administrative law judge. See 24 C.F.R. Sec. 24.713. The agency's final decision is also subject to review under the Administrative Procedures Act, 5 U.S.C. Sec. 701 (1988). See Darby v. Cisneros, --- U.S. ----, ----, 113 S.Ct. 2539, 2543, 125 L.Ed.2d 113 (1993). Here, contrary to the court's characterization that Suskie acted independently of a "lengthy, integrated, quasi-judicial process," the affidavits submitted by Suskie in support of his motion for summary judgment indicate that the sanctions were imposed in compliance with the applicable regulations, that Howard requested a formal hearing, and that a hearing was scheduled but cancelled when the sanctions were voluntarily withdrawn by the Department's officials. Because the sanctions imposed were subject to review and the regulations provided a sufficient mechanism to correct improperly imposed sanctions, Suskie is entitled to absolute immunity for his actions.
 
 
 18
 The court today refuses to follow controlling circuit precedent in Kwoun.
 
 
 19
 I would reverse the order denying Suskie's motion for summary judgment, because he is entitled to absolute immunity.
 
 
 
 *
 Henry Cisneros became Secretary of the Department of Housing and Urban Development on January 22, 1993
 
 
 **
 The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Compare Spielman v. Hildebrand, 873 F.2d 1377, 1383 (10th Cir.1989) (social worker removing child from pre-adoptive parents without an agency hearing); Hodorowski v. Ray, 844 F.2d 1210, 1214 (5th Cir.1988) (social worker seizing children from allegedly abusive father without a court order); Meyers v. Contra Costa Cty. Dept. of Soc. Serv., 812 F.2d 1154, 1157 (9th Cir.) (social worker ordering father to stay away from family home prior to initiating judicial proceedings), cert. denied, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987)
 
 
 [2]
 For similar quasi-judicial administrative sanction processes, see, e.g., 7 C.F.R. Sec. 278.6 (disqualification from participation in food stamp program); 30 C.F.R. Secs. 723.17-723.20 (civil penalties under the Surface Mining Control & Reclamation Act); 39 C.F.R. Secs. 927.1-927.2 (penalties for irregularities by non-governmental mail carriers); 43 C.F.R. Secs. 35.3-35.14 (penalties for submission of fraudulent claims to the Department of Interior); 49 C.F.R. Secs. 29.312-29.313 (Department of Transportation debarment sanction)