29 F.3d 464
 Andre T. HENDERSON, Plaintiff-Appellee,
v.
David BAIRD, jointly and severally, in their official
capacity; Dayton Hawkins, jointly and severally, in their
official capacity; James Anthony, jointly and severally, in
their official capacity; G.E. Huss, Captain, jointly and
severally, in their official capacity; Captain Morales,
jointly and severally, in their official capacity,
Defendants-Appellants.
 No. 93-1226.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1994.
Decided July 14, 1994.
 
 Lonnie F. Bryan, Minneapolis, MN, argued, for appellant.
 Craig S. Davis, Minneapolis, MN, argued, for appellee.
 Before BOWMAN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 HANSEN, Circuit Judge.
 
 
 1
 Andre T. Henderson brought this Bivens federal constitutional tort action[1] alleging that the defendants, federal prison officials, violated a number of his constitutional rights by instituting and carrying out prison disciplinary proceedings against him. The defendants appeal the district court's order denying their motion for qualified immunity on Henderson's substantive due process and retaliation claims. We reverse and remand.
 
 I.
 
 2
 In early 1987, Henderson was incarcerated at the Federal Correctional Institution at Sandstone, Minnesota. On March 12, 1987, David Baird, a corrections officer at the Sandstone prison, approached Henderson's cell and offered Henderson a food tray of lunch. When Henderson declined the offer, Officer Baird returned the food tray he was holding to the food cart. Officer Baird then approached the cell to remove beverage containers of Kool-Aid from the food slot that had been placed there earlier. What happened next is disputed. Officer Baird alleges that Henderson took one of the containers of Kool-Aid and threw it on Officer Baird. Henderson alleges that initially both he and Officer Baird had hold of the container and that when Henderson let loose of the container on which Officer Baird was still pulling, the Kool-Aid was inadvertently spilled on Officer Baird.
 
 
 3
 Officer Baird filed an incident report and charged Henderson with the offense of "Assaulting any person," in violation of Bureau of Prisons regulations. See 28 C.F.R. Sec. 541.13, Table 3 (1986). On March 16, 1987, the Unit Disciplinary Committee (UDC) held a hearing. Henderson did not meet or talk with the UDC, although there is some dispute about whether he declined to do so or simply did not have the opportunity. A member of the UDC subsequently advised Henderson that the UDC was referring the matter to the Institutional Discipline Committee (IDC) and informed him of his rights before the IDC.
 
 
 4
 The IDC held a hearing on this matter March 26, 1987. The IDC consisted of defendants Dayton Hawkins, James Anthony, and G.E. Huss, all employees of the prison. Both the IDC's disciplinary report and the affidavit statements of IDC members indicate that Henderson did not request witnesses for the IDC hearing. Henderson acknowledged in his original complaint in this Bivens lawsuit that he did not request witnesses for the IDC hearing. However, after the defendants had filed motions for summary judgment, Henderson filed a second amended complaint alleging that he had requested, but was not allowed to present, witnesses at the IDC hearing. This matter remains in dispute.
 
 
 5
 In his statement at the IDC hearing, Henderson said that he did not assault Officer Baird and that Officer Baird was lying about the incident. He noted that he would not have thrown anything because he was scheduled to be transferred to a halfway house the day after the incident. Prison officials had approved his release to the halfway house just two days before the incident. He also noted that he had been harassed by Officer Baird and others in the past and he had been "set up" in this case.
 
 
 6
 The IDC found that Henderson had committed the offense "[a]ssaulting any person," a violation rated in the category of greatest offense severity in the prison system. As a sanction for this conduct, the IDC imposed 15 days of disciplinary segregation, stripped him of 18 days of good time credits, and revoked his transfer to the halfway house. Henderson was given a copy of the report and notified of the sanctions imposed and his right to appeal. Henderson did not appeal. His sentence expired on July 31, 1987.
 
 
 7
 On March 13, 1990, Henderson filed this Bivens action in the United States District Court for the Western District of Michigan alleging a number of claims that the defendants had violated his Fifth Amendment and Eighth Amendment rights in both initiating and carrying out disciplinary proceedings against him at the prison in Sandstone, Minnesota. Henderson subsequently filed an amended complaint alleging that his substantive due process rights were violated because there was insufficient evidence of guilt against him on the charge. The defendants filed a motion to dismiss for failure to state a claim. Alternatively, the defendants moved for summary judgment on qualified immunity grounds. Henderson then filed a second amended complaint adding the allegation that Officer Baird filed false charges against him in retaliation because he reported his harassment by prison officials to the F.B.I., and the allegation that he had requested to call witnesses at the first disciplinary hearing.
 
 
 8
 The district court found venue in the Western District of Michigan to be improper and transferred the case to the United States District Court for the District of Minnesota. The case was referred to a magistrate judge who on March 12, 1992, entered an order and report and recommendation on the pending motions. The magistrate judge recommended, among other things, dismissing defendant Captain Morales, dismissing the claims against all the defendants in their official capacities, and dismissing three of the constitutional claims in their entirety. The magistrate judge also recommended, however, denying the defendants' motion to dismiss on: (1) Henderson's substantive due process claim alleging that he was found guilty of the violation without sufficient evidence on the charge against him; (2) his procedural due process claim that he was denied the right to call witnesses at the IDC hearing; and (3) his claim that Officer Baird initiated the disciplinary proceeding against him in retaliation for reporting harassment by prison officials to the F.B.I. The magistrate judge also recommended that the district court deny the motion for summary judgment on qualified immunity grounds.
 
 
 9
 The defendants filed objections to the report and recommendation and requested the district court to remand the case to the magistrate judge for reconsideration. The district court remanded the matter to the magistrate judge for reconsideration of the substantive due process and procedural due process claims. On reconsideration, the magistrate judge again recommended that the district court deny the defendants' motion to dismiss these claims. The district court then adopted both reports and recommendations in all respects over the defendants' renewed objections. In doing so, the district court specifically denied the defendants' motion for summary judgment on qualified immunity grounds. The defendants filed this interlocutory appeal challenging only the district court's qualified immunity ruling on Henderson's substantive due process claim and his retaliation claim against Officer Baird.[2]
 
 II.
 
 10
 While the denial of a motion for summary judgment is not normally an appealable final judgment, an exception exists for a summary judgment order denying qualified immunity. Mahers v. Harper, 12 F.3d 783, 785 (8th Cir.1993) (citing Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817-18, 86 L.Ed.2d 411 (1985)). We have jurisdiction to review such a decision as an interlocutory appeal. Bartlett v. Fisher, 972 F.2d 911, 914 (8th Cir.1992). We review de novo the district court's denial of qualified immunity at summary judgment. Id. We also have jurisdiction to review and decide issues of law that are closely related to the qualified immunity determination. Id. Closely related issues include the viability of the constitutional or common-law tort claims that would dispose of the immunity issue if resolved. Moreno v. Small Business Admin., 877 F.2d 715, 716 (8th Cir.1989).
 
 
 11
 "Generally, prison officials may rely on the defense of qualified immunity to protect them from liability for civil damages." Mahers, 12 F.3d at 785. They are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "In order for a person to have a clearly established right, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Mahers, 12 F.3d at 785 (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).
 
 III.
 
 12
 The defendants first argue that the district court erred in denying them qualified immunity on Henderson's substantive due process claim. The prison disciplinary committee found that Henderson had committed the offense of "[a]ssaulting any person," in violation of Bureau of Prisons' regulations found at 28 C.F.R. Sec. 541.13, Table 3 (1986). At the time of the disciplinary proceeding in March 1987, this regulation read in its entirety as follows: "101 Assaulting any person (includes sexual assault)." Id. The Bureau of Prisons categorized this as an offense of the greatest severity. See id.
 
 
 13
 The magistrate judge's reports and recommendations, which the district court adopted in their entirety, first found that by charging and disciplining Henderson for "[a]ssaulting any person," the defendants violated Henderson's substantive due process rights. The magistrate judge reasoned that a prison disciplinary proceeding violates a prisoner's substantive due process rights when the prisoner is charged and disciplined for an offense which is not supported by any evidence in the record. The magistrate judge concluded that in 1986, the offense of "assaulting any person" required proof of violent physical or verbal behavior, or the threat to the safety or well-being of anyone. The magistrate judge acknowledged that the regulation did not define "assault" but found that the regulation's legislative history (much of it promulgated after the discipline in this case), the dictionary definition of assault, and the fact the Bureau of Prisons classified "assaulting any person" as an offense of the greatest severity rating, all indicated that the regulation required proof of violent behavior presenting a threat to the safety of someone. The magistrate judge concluded that even if Henderson did indeed throw Kool-Aid on a guard, such evidence would not satisfy this standard and, therefore, Henderson was denied his "substantive due process right to be charged with an offense which was supported by evidence." (July 14, 1992, Report and Recommendation, at 17.) The magistrate judge went on to deny qualified immunity on the substantive due process claim because the law was clearly established "that substantive due process required that at least some evidence was needed to support a finding of guilt on a violation charged." (March 12, 1992, Report and Recommendation, at 30.)
 
 
 14
 The defendants argue that the magistrate judge and the district court erred in denying qualified immunity because the underlying constitutional substantive due process claim is without merit, and because the meaning of "assaulting any person" as defined by the district court to require violent behavior presenting a threat to the safety of someone was not clearly established at the time of Henderson's disciplinary hearing. We have substantial doubts about both the district court's interpretation of what proof the offense "assaulting any person" requires and its conclusion that disciplining Henderson under that section could violate his substantive due process rights. See Wood v. Strickland, 420 U.S. 308, 323-26, 95 S.Ct. 992, 1001-03, 43 L.Ed.2d 214 (1975) (no substantive due process issue involved where the reviewing court misinterprets regulation to contain proof requirement that is not suggested by a proper interpretation of the regulation); Hall v. Lombardi, 996 F.2d 954, 958 (8th Cir.1993) ("we have not yet decided whether substantive due process provides a right to be free from arbitrary and capricious state action"), cert. denied, --- U.S. ----, 114 S.Ct. 698, 126 L.Ed.2d 665 (1994). However, in spite of our doubts, we need not decide this case on these issues because we conclude, beyond any doubt, that the meaning of "assaulting any person" as defined by the district court was not clearly established at the time the defendants disciplined Henderson.
 
 
 15
 This case is much like our recent decision in Mahers where we reasoned that the meaning of a prison disciplinary regulation was not clearly established when the prison officials' interpretation of the regulation was not objectively unreasonable and there was no judicial decision at the time of the discipline to indicate that the regulation could not be applied as the prison officials sought to apply it. 12 F.3d at 785-86. Here, the defendants' interpretation of the offense of "[a]ssaulting any person" as covering a case where the prisoner threw a drink on a prison guard is not objectively unreasonable. Particularly in a prison setting, any physical contact initiated by a prisoner against a guard is to be avoided. Likewise, there was no existing judicial decision to alert the defendants that this regulation should not be applied in this situation. Following Mahers, we conclude that the district court's definition of "assaulting any person" was not clearly established in this case at the time of the incident and, therefore, Henderson did not have a clearly established substantive due process right not to be charged and disciplined under the regulation. Accordingly, the district court erred in denying the defendants qualified immunity on Henderson's substantive due process claim.
 
 IV.
 
 16
 Officer Baird argues that the district court erred when it denied him qualified immunity on Henderson's claim that Officer Baird filed the disciplinary complaint against Henderson in retaliation for Henderson reporting harassment by prison officials to the F.B.I. Officer Baird asserts that the district court should not have reached the qualified immunity question because Henderson does not have a viable claim of retaliation and the district court erred in denying his motion to dismiss this claim.
 
 
 17
 Henderson asserts that this issue is not properly before the court on an interlocutory appeal of the pretrial denial of qualified immunity. As noted earlier, we have jurisdiction to consider issues "closely related" to the immunity decision, including the viability of the plaintiff's underlying constitutional claim or common-law tort claim if resolving those issues would dispose of the immunity issue. Moreno, 877 F.2d at 716. We find that this issue is properly before the court because if Henderson's retaliation claim is not actionable, the issue of qualified immunity is moot.
 
 
 18
 A prisoner has a cause of action when the prisoner alleges that prison officials filed disciplinary charges based upon false allegations against the prisoner in retaliation for the prisoner's participation in grievances against prison officials. See, e.g., Goff v. Burton, 7 F.3d 734, 738 (8th Cir.1993) (prison officials may not "impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right"), cert. denied, --- U.S. ----, 114 S.Ct. 2684, 129 L.Ed.2d 817 (1994); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir.1989) (filing retaliatory disciplinary proceedings against prisoner who filed grievance against prison officials is actionable under 42 U.S.C. Sec. 1983 because such retaliation interferes with prisoner's access to grievance procedure). We also have held, however, that "no claim can be stated when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform." Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir.1990). Following Orebaugh, we recently stated that "if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." Goff, 7 F.3d at 738.
 
 
 19
 We conclude under the above authority that Henderson's retaliation claim must fail. The prison disciplinary committee found that Henderson committed an actual violation of prison rules based on Officer Baird's description of the event. Because the finding was based on some evidence of the violation, the finding essentially checkmates his retaliation claim. See Superintendent v. Hill, 472 U.S. 445, 454-56, 105 S.Ct. 2768, 2773-75, 86 L.Ed.2d 356 (1985).
 
 
 20
 The magistrate judge attempted to distinguish this case from the Orebaugh line of cases. The magistrate judge found those cases inapplicable to Henderson because he had the right to report harassment by prison officials to the F.B.I. and "if that contact [with the F.B.I.] generated the retaliation, as Plaintiff contends, then a constitutional claim is stated." The magistrate judge, however, erred in framing the inquiry. The critical inquiry under Orebaugh and related cases is not whether the prisoner alleges that prison officials retaliated against him for participating in constitutionally protected activity, but instead is whether the prison disciplinary committee ultimately found based upon some evidence that the prisoner committed the charged violation of the prison regulations. Here, it is undisputed that the prison disciplinary committee found that Henderson committed the violation charged. Hence, Henderson has no actionable claim of retaliation under our case law. Our conclusion disposes of the qualified immunity question as it is now moot.
 
 V.
 
 21
 We reverse the district court's order denying qualified immunity to the defendants on Henderson's substantive due process claim and denying Officer Baird's motion to dismiss Henderson's retaliation claim. We remand for further proceedings on the remaining procedural due process claim.
 
 
 
 [1]
 See Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [2]
 The defendants have specifically stated that they are not appealing the district court's ruling on Henderson's procedural due process claim concerning Henderson's allegation that he was denied the right to call witnesses at the IDC hearing. (Appellant's Reply Br. at 1-2.)