**Jasper FALKNER, Plaintiff,**

v.

**Robert P. HOUSTON, Douglas E. June, et al., Defendant.**

**No. 4:CV95–3329.**

United States District Court, D. Nebraska.

March 6, 1997.

Jasper Falkner, Lincoln, NE, pro se.

Bryan S. Hatch, Cline, Williams Law Firm, Lincoln, NE, for Jasper Falkner.

Melanie J. Whittamore–Mantzios, Attorney General's Office, Lincoln, NE, for Robert P. Houston, Harold W. Clarke, Douglas E. June.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

In this § 1983 action for an alleged deprivation of plaintiff's constitutional rights, Defendant Douglas E. June has filed a motion for leave to assert at trial the defense of qualified immunity, without presenting it in a motion for summary judgment to be resolved before trial. (Filing 22.) For the reasons discussed more fully below, I shall deny the motion.

## DISCUSSION

■ The progression order in this case, as with all actions in this court filed pursuant to 42 U.S.C. § 1983, requires that the "defense of qualified immunity ... even if pleaded in the defendant's answer, shall be asserted by proper motion for summary judgment, partial summary judgment, to dismiss, or for judgment on the pleadings." (Filing 19 at ¶ 13.) If the defendant fails to file such a

motion within sixty days of entry of the progression order, the defense is "deemed waived and abandoned, the defendant then having submitted to suit." (*Id.*) In this case defendant requests the court to bypass that requirement and permit him to present the issue at trial, without presenting it beforehand via a motion for summary judgment, motion to dismiss, or motion for judgment on the pleadings. (Filing 22.) From the tenor of defendant's brief in support of his request, it is apparent he is asserting an unqualified right to do so. His brief is devoid of any factual discussion and is, in fact, identical to a brief filed by defendant's counsel, the Nebraska Attorney General's Office, in another unrelated case, *Escamilla v. Tyler*, 4:95CV:3411. As I need not remind defendant's counsel, however, the Honorable Richard G. Kopf, the active federal district judge sitting in Lincoln, has already rejected this assertion.

In *Stevens v. Nolan*, 4:CV95–3252 (D.Neb.) (unpublished opinion dated March 26, 1996), Judge Kopf reasoned that "Federal Rule of Civil Procedure 16(b) is properly interpreted to give this court the power to require that the defense of qualified immunity be asserted by motion before trial and if not asserted waived." (*Id.*) "Simply put, defendants have no 'right' to disregard the progression order no matter what they think the defense of qualified immunity really means." (*Id.*) (citing *Walsh v. Mellas*, 837 F.2d 789, 799–800 (7th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988)).

■ The affirmative defense of qualified immunity [1] protects government officials exercising administrative or executive functions from personal liability for money damages on claims raising alleged violations of the Constitution or federal law. The defense, a judicially-created common law remedy first recognized by the Supreme Court in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), has been characterized as an ef-

---

**1.** Qualified immunity is an affirmative defense that must be pleaded by the defendant official seeking its protection. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); *Mahers v. Harper*, 12 F.3d 783, 785 (8th Cir.1993). Accordingly, defendant bears the burden of pleading and proving it. *See Mahers*, 12 F.3d at 785; *Watertown Equip. Co. v. Norwest Bank Watertown, N.A.*, 830 F.2d 1487, 1490 (8th Cir.1987), *cert. denied*, 486 U.S. 1001, 108 S.Ct. 1723, 100 L.Ed.2d 188 (1988).

fort to strike a balance between vindication of constitutional guarantees and the social costs of lawsuits against public officials. *See Harlow v. Fitzgerald,* 457 U.S. 800, 813–15, 102 S.Ct. 2727, 2735–37, 73 L.Ed.2d 396 (1982).[2] In *Harlow,* the Court also eliminated a "subjective good faith" element from the inquiry and held that qualified immunity should be governed by a solely objective analysis:

> government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.

*Id.* at 813, 102 S.Ct. at 2735–36; *cf. Mitchell v. Forsyth,* 472 U.S. 511, 517, 105 S.Ct. 2806, 2810–11, 86 L.Ed.2d 411 (1985); *Davis v. Scherer,* 468 U.S. 183, 191, 104 S.Ct. 3012, 3017–18, 82 L.Ed.2d 139 (1984).

■■■ Under the objective reasonableness standard set forth in *Harlow,* in the ordinary case a defendant official may prevail on the qualified immunity defense at any one of four progressive findings:

(1) Defendant's challenged conduct is not a violation of constitutional or federal law as currently interpreted;[3] or

(2) Although defendant's challenged conduct is a violation of constitutional or federal law as currently interpreted, that violation was not "clearly established" at the time of defendant's challenged conduct;[4] or

(3) The facts are undisputed, and a reasonable officer, confronting these facts and circumstances at the time of her challenged conduct, would not have understood that conduct to have violated plaintiff's clearly established constitutional or federal rights; or

(4) The facts are disputed, and viewing the facts in the light most favorable to plaintiff—that is, assuming that the plaintiff will prove his allegations[5]—a reasonable officer, confronting these facts and circumstances at the time of her challenged conduct, would not have understood that conduct to have violated plaintiff's clearly established constitutional or federal rights.

*Cf. Foulks v. Cole County,* 991 F.2d 454, 456 (8th Cir.1993). None of these findings permits the court to engage in an extended factual inquiry.[6]

For this reason, the Supreme Court has repeatedly emphasized qualified immunity is a threshold issue that should be resolved at

---

2. The Court has identified these "social costs" as

the expenses of litigation, the diversion of official energy from pressing public issues, the deterrence of able citizens from acceptance of public office, and the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'

*Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736.

3. *See Siegert v. Gilley,* 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991).

4. For the right to be clearly established, "[t]he 'contours' of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right ... [I]n light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Mahers v. Harper,* 12 F.3d 783, 785 (8th Cir.1993).

5. To be sure, there are cases which have found that the plaintiff's failure to show existence of an

issue of material fact concerning an element of the plaintiff's case permits entry of summary judgment on qualified immunity grounds. *See, e.g., Howard v. Suskie,* 26 F.3d 84 (8th Cir.1994). This approach confuses the doctrine of qualified immunity because it focuses on whether plaintiff can prove his case. That inquiry is a traditional summary judgment inquiry addressing the *merits* of *plaintiff's* case, not the availability of an *immunity/defense* based on the state of the law at: the time of the challenged conduct. The former is generally ripe for review only after the plaintiff has been afforded an opportunity for full discovery, which, of course, is what the doctrine of qualified immunity is designed to preclude. *Harlow, supra; Anderson, infra.*

6. This stems from the recognition that the qualified immunity defense as applied under the framework articulated in *Harlow*—more closely resembles a motion to dismiss for failure to state a claim under *Fed.R.Civ.P.* 12(b)(6) than a motion for summary judgment under *Fed.R.Civ.P.* 56. *See* Stephanie E. Balcerzak, *Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation,* 95 Yale L.J. 126, 145 n. 72 (1985).

the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815–16; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Cases in which it is appropriate to raise the defense at trial, without raising it beforehand on the pleadings or in a motion for summary judgment, are "rare." *Nolan,* 4:CV95–3252 (D.Neb.) (unpublished opinion dated March 26, 1996 at 2). "[T]here is normally no reason to defer a motion for qualified immunity until trial simply because of a dispute about whether the defendant believed his or her conduct was lawful." (*Id.* at 6.)

The reason for this rule is simple: "[Q]ualified immunity is ... conceptually distinct from the merits of the plaintiff's claim." *Mitchell,* 472 U.S. at 527, 105 S.Ct. at 2816. The only issue to be decided by the court "is purely a legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Id.* at 528 n. 9, 105 S.Ct. at 2816 n. 9. In the ordinary case determination of eligibility for qualified immunity can and should be made well before trial, to save and spare both the parties and the court the time, effort, and expense of litigating a matter that is best resolved at the outset. On the other hand, requiring a government official in the ordinary case to present the defense to the court early in the proceedings does not pose serious interference with the discharge of that official's government functions. *Zayas–Green v. Casaine,* 906 F.2d 18 (1st Cir.1990). Simply stated, unless there is a good reason for doing so, it is much more efficient, for all concerned, for the defendant to present the defense at the outset. *See Nolan, supra,* at 6. "The quid pro quo is obvious: in exchange for the defendant's right to interrupt the judicial process, the court may expect a reasonable modicum of diligence in the exercise of that right." *Kennedy v. City of Cleveland,* 797 F.2d 297, 301 (6th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987).

Defendant cites several post–*Mitchell* cases containing language that might conceivably support his position. The procedural posture of most of these cases, however, is very different from the case at bar. The majority of them involve circumstances where the defendant official filed an unsuccessful motion for summary judgment based on qualified immunity. For example, in *Apostol v. Gallion,* 870 F.2d 1335 (7th Cir. 1989), a consolidated case, the district judges refused to stay litigation pending appeal of the denials of summary judgment; in *Spann v. Rainey,* 987 F.2d 1110 (5th Cir.1993), the defendant official failed to raise the issue before the first jury trial, but after a directed verdict wished to assert the issue to avoid a second trial and, ultimately, liability; in *Matherne v. Wilson,* 851 F.2d 752 (5th Cir. 1988), the defendant official failed to take an interlocutory appeal, but raised the denial of the motion for summary judgment on appeal from the subsequent adverse judgment against him. The procedural posture of these cases is so different from the case at bar that they are not significant.

Another case cited by defendant, *Quezada v. County of Bernalillo,* 944 F.2d 710 (10th Cir.1991), actually supports the contrary position. It states,

Defendants must raise the qualified immunity defense in order to benefit from the substantial shield it affords. Defendants may do this in their answer, or in a motion to dismiss, or in a motion for summary judgment. Defendants *who are unsuccessful in having a lawsuit dismissed on qualified immunity grounds before trial may reassert* the defense at trial or after trial.

*Id.* at 718 (citations omitted) (emphasis added).

Language in a few other opinions is more supportive of defendant's position, *see Kennedy,* 797 F.2d 297, 305 (6th Cir.1986); *Zayas–Green v. Casaine,* 906 F.2d 18 (1st Cir. 1990); *Alvarado v. Picur,* 859 F.2d 448, 451 (7th Cir.1988). Nevertheless, I decline to adopt defendant's position for three reasons. First, the contention that defendant officials can reserve the issue in any case, for any reason, as long as they request permission to do so, is contrary to Judge Kopf's opinion in *Nolan.* Second, such a practice, if regularly undertaken by the Attorney General's office,

would severely burden the court's resources by causing it to fully litigate and try many cases that could potentially be resolved much earlier in the proceedings. Third, and most importantly, such an exception would quickly swallow the Supreme Court's general rule that qualified immunity is a threshold issue which should be resolved at the earliest possible stage of litigation. *See Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6; *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815–16; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

■ That is not to say that, as *Nolan* recognized, in some limited circumstances it might be reasonable to defer presentation of the defense until trial; but the circumstances in which it would be prudent to do so are just that, limited. In the exceptional case, where detailed factual findings significantly affect the qualified immunity inquiry, it may be appropriate to defer presentation of the defense until trial.[7] Such cases are rare, however, and consideration of a request to defer presentation of the defense requires a case-by-case determination in accordance with the facts peculiar to the inquiry. *Nolan, supra.* At the very least, the defendant official should show that significant disputed facts would very likely preclude a successful motion to dismiss or for summary judgment on qualified immunity grounds and that the filing of such a motion would be nothing but a waste of time and money. *See generally Nolan, supra.* Careful consideration of the disputed facts, their materiality, and the reasons they could not be assumed established would be necessary to make the determination.

In this case defendant has failed to discuss in any way how the facts of this particular case fall within the exception to the admonition that qualified immunity is usually a threshold issue. Consequently, I shall deny the motion in this case. *See Nolan, supra.* However, as relevant dates in the progression order have expired during the pendency of this motion, I shall grant defendant an additional thirty days in which to file, if he chooses, a motion asserting qualified immunity or another motion seeking permission to defer presentation of the issue that demonstrates this is the type of rare case noted above.

## IT THEREFORE HEREBY IS ORDERED:

1. Defendant's motion to waive pretrial presentation of qualified immunity but reassert the issue at trial, (filing 22), is denied.

2. Defendant is given thirty days in which to file a motion asserting qualified immunity or a motion seeking permission to defer presentation of qualified immunity at trial.

7. In *Rellergert v. Cape Girardeau Co.,* 924 F.2d 794 (8th Cir.1991), a panel of the Eighth Circuit Court of Appeals affirmed the grant of a JNOV motion, on qualified immunity grounds, following a jury trial. In that case a child of a deceased prison inmate, through his mother, sued officials at a county jail after his father hanged himself while incarcerated there. After a close review of the district court's factual determinations, and after noting that the parameters of qualified immunity for prison-suicides cases are particularly uncertain, the appellate court concluded that qualified immunity shielded the officials from liability under the circumstances. *Id.* at 798. In its opinion the panel stated, "To provide its fullest and best use, qualified immunity ideally is addressed by summary judgment, but the defense can also be argued at trial and after judgment." *Id.* at 796.

This statement, however, does not support defendant's contention in this case, because there is no suggestion that the officials in *Rellergert* did not raise the defense in a motion for summary judgment before trial or that the district court established a deadline for filing such motions but the officials neglected it. *See id.* It is well established that officials can "reassert ... qualified immunity claims at and after trial when the factual disputes have been resolved" *if* they filed proper motions for summary judgment that were ultimately denied. *Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir.1991) (emphasis in original); *see also Guffey v. Wyatt,* 18 F.3d 869, 873 (10th Cir.1994); *Quezada v. County of Bernalillo,* 944 F.2d 710 (10th Cir.1991). That proposition is quite distinct from the contention that officials may assert the issue whenever they choose, for whatever reason they choose, in spite of efforts of the court to effectively manage its docket. *See Nolan, supra.*